IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| LACY ATKINS, | ) |
| | ) |
| Plaintiff, | ) 2:14-CV-00067-JO |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, Acting as | ) |
| Commissioner of Social Security, | ) OPINION AND ORDER |
| | ) |
| Defendant. | ) |
| | ) |

JONES, J.,

Plaintiff Lacy Atkins appeals the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. 42 U.S.C. §§ 401–33. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

On August 18, 2009, Atkins filed a claim for disability insurance benefits. Admin. R. 180–81. Atkins alleged she became disabled beginning September 6, 2007, due to mental and physical impairments and pain. Admin. R. 190. After an administrative hearing, the

1 - OPINION AND ORDER

Administrative Law Judge ("ALJ") found Atkins was not disabled and denied her claim. Admin. R. 31–45. The Appeals Council denied Atkins' request for review, making the ALJ's decision the final agency decision. Admin. R. 10–15.

The ALJ correctly determined that the relevant time for Atkins' claim ended on December 31, 2008, when her insured status under the Social Security Act expired. Admin. R. 36. To prevail on her claim, Atkins must show that she was disabled on or before that date. 42 U.S.C. § 423(a)(1)(A); *see Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ found that during the relevant time, Atkins' ability to work was adversely affected by impairments due to fibromyalgia and obesity. Admin. R. 40–41. The ALJ found that despite her limitations, Atkins retained the residual functional capacity ("RFC") to perform light work with lifting and carrying of 20 pounds occasionally, 10 pounds frequently; standing, walking, or sitting six hours of an eight-hour workday; but she must avoid concentrated exposure to extreme hot and cold temperatures, unprotected heights, and moving or dangerous machinery. Admin. R. 40. The vocational expert ("VE") testified that a person having Atkins' RFC and other vocational factors could perform the activities required in representative occupations such as assembler, electronics worker, and folder, and that those represent hundreds of thousands of jobs in the national economy. Admin. R. 44, 87–89. The ALJ therefore concluded that Atkins was not disabled within the meaning of the Social Security Act during the relevant time. Admin. R. 44–45.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Richardson v.*

*Perales,*402 U.S. 389, 401 (1971). Substantial evidence may be less than a preponderance of the evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Under this standard, the court must consider the record as a whole, and uphold the Commissioner's factual findings that are supported by inferences reasonably drawn from the evidence even if another interpretation is also rational. *Robbins*, 466 F.3d at 882; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala,* 53 F.3d 1035, 1039–40 (9th Cir. 1995).

## DISCUSSION

### I.  Claims of Error

Atkins contends the ALJ failed to provide sufficient reasons to reject medical evidence of James A. Weeks, M.D. and Nancy Maloney, M.D. and reasons to discredit Atkins' credibility. Atkins asks the court to credit this evidence as a matter of law and to remand for payment of benefits or alternatively, for further proceedings. Pl's Opening Brief at 11.

### II.  Medical Opinions

Atkins asserts the ALJ improperly considered the opinions of treating physicians James A. Weeks, M.D., and Nancy Maloney, M.D. Specifically, the opinions at issue are two letters in answer to a questionnaire. Pl.'s Opening Brief 3–5, 11.

Three years after the relevant time, on December 20, 2011, Dr. Maloney summarized Atkins' treatment and functional limitations in a questionnaire produced by Atkins' attorney. She determined that due to the pain, fatigue, and depression, Atkins needed to "position horizontally on a break from pain." Dr. Maloney stated that Atkins experienced reduction in range of motion, endurance, and ability to open the mouth. In addition, Dr. Maloney opined that due to pain related to fibromyalgia, TMJ dysfunction, depression/anxiety, OCD, bipolar, migraine headaches,

3 - OPINION AND ORDER

multiple-site osteoarthritis and carpal tunnel syndrome, Atkins could not consistently work on a full-time regular and sustained basis. Admin. R. 576–77. Dr. Maloney believed that Atkins was not a malingerer.

In January 2012, Dr. Weeks issued a medical source statement in response to a questionnaire produced by Atkins' attorney. He explained that he had treated Atkins for many years prior to and after September 2007. He outlined Atkins' medical complaints including anxiety, depression, agoraphobia, panic disorder, chronic TMJ, osteoarthritis, fibromyalgia, and carpal tunnel syndrome. Dr. Weeks explained that Atkins was on prescription Oxycontin, Oxycodone, and various psychiatric medications, including Zoloft, which she dropped due to pregnancy. Admin. R. 580.

Dr. Weeks opined that due to fibromyalgia and osteoarthritis, Atkins had to change positions frequently and would be unable to sit for one hour or stand for 30 minutes on a regular basis. He noted that the restriction on standing was also due to a history of right knee meniscal tear. He opined that Atkins must lie down in a recliner for approximately one to four hours in an eight-hour period. Dr. Weeks opined that Atkins had difficulty functioning due to migraines and chronic tension headaches; limited use of arms and hands and motor function due to carpal tunnel, osteoporosis and fibromyalgia; difficulty talking and having facial expression due to her TMJ; difficulty concentrating due to chronic pain and her medications; and severe fatigue and anxiety due to her conditions. He did not believe that Atkins was a malingerer. Dr. Weeks believed that the combination of Atkins' impairments and medication made her unemployable and he did not foresee her condition improving significantly over the next few years. Admin. R. 580.

The ALJ gave the opinions of Drs. Weeks and Maloney no weight. Admin R. 42. The ALJ noted that although treating sources are generally entitled to great weight, such opinions must be well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence. Admin. R. 41–42 citing 20 C.F.R. 404.1527 and

4 - OPINION AND ORDER

SSR 96-2p. The ALJ found Drs. Weeks' and Maloney's opinions inconsistent, in significant respects described below, with the objective test results, opinions during the relevant time, and with the findings of Michael Henderson, D.O., a consultative examiner who examined Atkins at the order of the ALJ. Admin. R. 42–43.

To reject a controverted treating physician's opinion, the ALJ must give specific and legitimate reasons. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence,'" (quoting *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008))).

The ALJ's determination that the opinions of Drs. Weeks and Maloney were not supported by objective test results during the relevant time is supported by substantial evidence. The ALJ noted that there was substantial evidence that Atkins was overmedicated supported by the fact that Atkins weaned away from medication without adverse results due to her pregnancy. Admin. R. 42, 592, 598, 608. In March 2007, during the relevant time, Dr. Weeks also noted that he had discussed with Atkins the importance of weaning off all of her medications, opining that it would improve her memory, mood, and weight. Admin. R. 445. As long as there is more than a scintilla of evidence to support the interpretation of the medical evidence the ALJ provides, and the interpretation is based on the correct legal standards, it should not be overturned. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Drs. Weeks' and Maloney's assessments in response to the questionnaire were inconsistent with the records during the relevant time. Several of the alleged contributory impairments did not develop until after the relevant time. In their assessments, both Drs. Weeks and Maloney opined that osteoarthritis contributed to Atkins' condition during the relevant period. Admin. R. 576, 580. However, there were no test results or imaging studies to support a finding of "multiple site

5 - OPINION AND ORDER

osteoarthritis" and the record shows Dr. Maloney first assessed osteoarthritis in 2011, over two years after the relevant period. Admin. R. 545, 574, 576, 580. Dr. Weeks opined that Atkins could not stand for 30 minutes on a regular basis due to a right knee meniscal tear and chronic knee pain. Admin. R. 580. Atkins' right knee pain resulted from falling while roller-skating in February 2010, two years after the date last insured. Admin. R. 680. Along with multiple-site osteoarthritis, Dr. Maloney included carpal tunnel syndrome as one of the conditions restricting Atkins from any sort of regular basis work. Admin. R. 576. Four months after the date last insured, electrodiagnostic test results indicated only very mild right carpal tunnel syndrome and none on the left, and later records show her symptoms improved. Admin. R. 399, 546.

The retrospective assessments of Drs. Weeks and Maloney are inconsistent with their own medical notes during the relevant time. Dr. Maloney wrote during the relevant time in September 2007 that she recommended Atkins rest 15–20 minutes daily; this medical note suggests Atkins was capable of being up and active the remainder of the day. Admin. R. 42, 383. Dr. Maloney's 2011 assessment was inconsistent with her previous opinions during the relevant time. In the assessment at issue, Dr. Maloney noted Atkins would not be able to work on a regular basis because "she needs to position horizontally on a break from pain." Admin. R. 577. Determining that a medical opinion is contradicted by the same doctor's notes, observations, and opinions is "a permissible determination within the ALJ's province." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) (An opinion itself may provide grounds for suspicion as to legitimacy if it contains inconsistencies with the doctor's own treatment notes). Dr. Maloney's final treatment note during the relevant period, dated November 20, 2008, explained that Atkins was stable on a combination of medications with "no adverse side effects" and experienced increased pain from fibromyalgia "during sleep." Admin. R. 41, 378.

Dr. Weeks' retrospective opinion dated January 2011 was inconsistent with his assessments

6 - OPINION AND ORDER

during the relevant time. Dr. Weeks' final treatment notes during the relevant time opined that Atkins was "doing very well," was "in no acute distress," had a "good range of motion" in her upper and lower extremities, and was considering getting pregnant. Admin. R. 42, 437–38. The ALJ noted that these types of comments are inconsistent with an individual who cannot sustain even sedentary work. Admin. R. 42. A physician's opinion of the level of impairment may be rejected because it is unreasonable in light of other evidence in the record. *Morgan v. Commissioner*, 169 F.3d 595, 601 (9th Cir. 1999).

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson*, 359 F.3d at 1195 (citations omitted). In this case, Drs. Maloney and Weeks, the treating physicians retrospectively opined that Atkins was unable to work during the relevant period due to conditions that did not manifest or become determinable until after Atkins' date last insured and opined that the conditions determinable during the relevant time were more severe than the records show. Accordingly, the ALJ reasonably found Drs. Maloney's and Weeks' opinions unsupported by the evidence.

The ALJ ordered a post-hearing consultative examination because the two treating sources did not seem consistent with the objective medical record. Admin. R. 42, 573–83, 697–707. Michael Henderson, D.O., examined Atkins after the hearing. Dr. Henderson found little objective basis for functional limitations, assessing that the examination was marked by nonorganic pain behavior including superficial pain, pain across multiple borders, pain with axial compression, axial rotation and discrepancies in range of motion. Admin. R. 42, 697–707. Dr. Henderson observed that Atkins was able to don and doff shoes and socks without any apparent problem; her gait was normal; and she could perform heel, toe, and tandem walk. Dr. Henderson noted that Atkins did not exert full effort on the range of motion test, her bulk and tone were normal, and strength was 5 out of 5 in

7 - OPINION AND ORDER

upper and lower extremities, as well as in her hands. Although she was only able to squat 25% of the way down, she transferred on and off the exam table without difficultly. Dr. Henderson found that 14 of 18 fibromyalgia tender points were positive, while Tinel's and Phalen's were negative. He assessed that Atkins' report of daily 10 out of 10 pain was inconsistent with examination. Admin. R. 699. Dr. Henderson was not able to confirm the diagnosis or source of Atkins' alleged back pain given the widespread nature and inconsistencies in testing, therefore he did not opine any exertional limitations or abilities. He concluded that at most Atkins had some indication of degenerative disc disease, fibromyalgia, and migraines. Admin. R. 697–707.

Although the ALJ found Dr. Henderson's findings to be inconsistent with Atkins' self-report and the treating source opinions, namely Drs. Weeks and Maloney, the ALJ found Dr. Henderson's findings to be consistent with examinations and opinions by the various sources of record. The ALJ reasoned that even though Dr. Henderson's assessment was made several years after the period at issue, it was more accurate and consistent with both State Agency consultant's opinions and other evidence on record than the opinions of Drs. Weeks and Maloney. The ALJ adopted the State Agency consultants' RFC assessment. Admin. R. 43 referring to Admin. R. 496–503, 523. The ALJ is responsible for judging the medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). As long as there is more than a scintilla of evidence to support the interpretation of the medical evidence the ALJ provides, and the interpretation is based on the correct legal standards, it should not be overturned. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

The ALJ afforded great weight to Dr. Henderson's opinion relative to that of Drs. Weeks and Maloney, because it was more consistent with the record as a whole, and was well reasoned and persuasive. The ALJ reasonably found it more reliable than Drs. Weeks' and Maloney's medical assessments, which were contradictory and unsupported by clinical findings from the relevant time.

Admin. R. 41–43; *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999).

The ALJ's findings are supported by substantial evidence and set forth specific, legitimate reasons for rejecting the opinions of Drs. Weeks and Maloney. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ reasonably relied on other evidence he found more reliable. I find no error in the ALJ's evaluation of Drs. Weeks' and Maloney's opinions.

## III.     Credibility Determination

The ALJ found that Atkins' impairments could reasonably be expected to produce some of the symptoms she alleged but that she lacked credibility regarding the intensity, persistence, and limiting effects of her symptoms. Admin. R. 41. The ALJ accepted that Atkins experienced pain and fatigue and that her fibromyalgia and obesity qualified as severe impairments. Admin. R. 37, 41. He also believed that these impairments imposed significant limitations on Atkins' ability to work, as reflected in the RFC assessment. Admin. R. 40–41.

The ALJ found that Atkins was not credible in her claims of functional limitations beyond those in the RFC assessment, including those summarized here. Admin. R. 40–41. Atkins claimed she was unable to work full-time primarily due to fibromyalgia, migraine headaches, and mentioned mental impairments. She said she had pain throughout her body and sometimes had to stay in a dark room all day due to the headaches. She claimed she would "probably" work at a slow pace and estimated she could sit one hour and stand one hour but stated she lies down in a recliner daily. Atkins' self-reported pain levels were often out of proportion to her reported abilities. Admin. R. 41.

An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle*, 533 F.3d at 1160; *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti*,

9 - OPINION AND ORDER

533 F.3d at 1039.

The ALJ found Atkins' allegations of pain and subjective statements about her limitations not credible because they were out of proportion to her reported abilities in the objective and clinical medical findings during the relevant time. Admin. R. 41. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, *available at* 1996 WL 374186, at *5. During the relevant time, in November 2007, on a scale of 1 to 10, with 10 equating to worst possible pain and need of emergent treatment, Atkins claimed her pain level to be eight to nine. However, at the same time she reported getting out of the house more, being more active, and having an improved mood. Admin. R. 41, 382, 419. Two months later, Atkins alleged pain at a level of 10, while also presenting an improved affect. Admin. R. 41, 381. During the same time period, Anthony Monteverdi, M.D., noted that Atkins had no increase in pain while reducing Cymbalta. Admin. R. 41, 415. In May and August of 2008, Atkins reported walking, going camping, and taking her son to the park every day. Admin. R. 41, 379–380.

As noted above, in October 2008, during the relevant time, Dr. Weeks noted that Atkins was doing very well. Admin. R. 41, 437. Dr. Maloney's last treatment note during the insured period reported that Atkins was stable on medications, while indicating she experienced more pain during sleep. Admin. R. 41, 378.

The ALJ also found that Dr. Henderson's assessment was inconsistent with Atkins' self-report. Dr. Henderson noted that Atkins' report that she had daily 10 out of 10 pain was inconsistent with the normal examination, and as summarized above, Atkins' self-report did not reflect her abilities and limitations during the examination. Admin. R. 42–43; 697–707. An examining physician's opinion that Plaintiff's ability to work is not objectively limited undermines Plaintiff's credibility. *Batson*, 359 F.3d at 1196.

10 - OPINION AND ORDER

The ALJ also noted that Atkins' limited compliance with treatment suggested that her symptoms of anxiety and depression were not as limiting as she alleged and amounted to no more than minimal limitations in work activity. Admin. R. 38. Atkins took a lackadaisical attitude or approach to mental health treatment by only seeing her counselor, Linda J. Cook, PhD., intermittently, cancelling appointments many times. Admin. R. 38, 454–55, 572. Dr. Cook reported that Atkins did not apply techniques learned in session to her life out of session or review materials given in session at home. Admin. R. 696. When a claimant makes subjective claims of disabling symptoms, but disregards recommended treatment designed to alleviate those symptoms, an ALJ may reasonably find the subjective claims unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F. 3d 1144, 1147–48 (9th Cir. 2001).

The ALJ's findings are supported by substantial evidence and show that he did not arbitrarily discount Atkins' credibility. The reasoning is clear and convincing and I find no error in the ALJ's credibility determination. *Carmickle*, 533 F.3d at 1160; *Tommasetti*, 533 F.3d at 1039.

## CONCLUSION

Atkins's claims of error cannot be sustained for the foregoing reasons. The Commissioner's decision is AFFIRMED.

DATED this 31st day of March, 2015.

Robert E. Jones, Senior Judge
United States District Court

11 - OPINION AND ORDER